# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMONTE F. WILLIAMS : | |
| : | No. 20-cv-2925-JMY |
| vs. : | |
| : | |
| PIEDMONT AIRLINES, INC., and : | |
| DAVID ZAVALA. : | |

**Memorandum**

**Younge, J.**                                                                                          August 18, 2022

Currently before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the Defendants, Piedmont Airlines, Inc. (hereafter "Piedmont") and David Zavala.  (Motion to Dismiss, ECF No. 16.)  The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78; L.R.  7.1(f).  For the reasons set forth below, the Court will grant the Defendants' Motion and dismiss the Complaint.  Plaintiff will be provided with thirty days to file an amended complaint.

**I.       Summary of Relevant Procedural and Factual Background:**

On November 11, 2019, Williams filed a charge of discrimination with the Equal Employment Opportunity Commission ("Charge EEOC").  (Charge of Discrimination No. 530-2019-06119 ("Charge"), Reply to Response to MTD, Ex. 1, ECF No. 20-1.)  The EEOC dismissed the Charge on March 9, 2020, and Williams filed this lawsuit on June 9, 2020. Williams sued Piedmont and David Zavala alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA").  (Complaint page 1; ECF No. 1.)  Williams asserts that he was subject to "unequal terms and conditions of employment" and "retaliation," and that Piedmont "failed to stop harassment."  (*Id.* page 3.)  Regarding his retaliation claim, Mr. Williams alleges

that he "was retaliated against for" (1) "filing an EEOC Complaint against Piedmont," (2) "complaining about racial discrimination towards African-Americans in reference to hiring and firing," and for (3) stating that "African-Americans are hired into mid-level management [positions] at a far lower rate than Hispanics." (*Id.* page 3.)

To support these allegations, Williams asserts the following factual averments. Without providing a specific date, Mr. Williams alleges he "represented employee Marcus Murray [who] was scheduled for termination." (*Id.* page 6.) In the course of Williams' representation of his colleague, who was African-American, he allegedly "explained to Manager Claudia Sales that there were Hispanic employees [who] had accumulated far more attendance points than Mr. Murray but remained employees of the company." (*Id.*) Williams then alleges, "[t]he following week my employee flight benefits were deactivated due to a corporate investigation." Williams avers "corporate security" told him he "did not violate the company's travel policy", but that his "flight benefits [were inactivated] due to a corporate investigation." (*Id.* page 6.) Williams asserts that his flight benefits remain inactive, but that the investigation concluded at an unspecified date in 2019. (*Id.* page 6.)

Williams also describes a purported dispute that he had with a Ramp Department Manager identified in the Complaint as David Zavala. (*Id.* page 7.) The purported dispute related to a written warning Williams received for poor performance which was, according to Williams, overturned through the system board grievance process. (*Id.*) Williams avers, "David Zavala attempted to persuade me that the write-up was not overturned by the system board by disclosing to me a fictitious email that stated the write-up was upheld by the system board." Williams goes on to allege that David Zavala, "attempted to alter the results of [his] system board hearing" by trying to persuade him that the system board had not, in fact, overturned his

performance write-up. Williams alleges that Mr. Zavala "admitted to the so called mistake once [Mr. Williams] reminded him" of the "union letter that proves the system board overturned the disciplinary action brought against [Williams]." (*Id.* page 7.)

Williams goes on to allege "several employees and union members were told they are not allowed to speak or contact [Williams] because he had complained about racial discrimination," and that Piedmont and the Union worked in conjunction to prevent Williams from representing his nephew, Brandon Williams, in grievance proceedings. (*Id.* page 7-8.) Finally, Williams avers that his nephew was "terminated for alleged violations of the company's travel policy," after Williams complained that Piedmont discriminated against African-Americans. (*Id.*) Williams specifically avers, "My nephew Brandon Williams was also targeted for termination after I complained of racial discrimination against African-Americans . . . Brandon was unjustly terminated for alleged violations of the company's travel policy." (Complaint page 7-8.)

## II.   Legal Standard:

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. See, e.g.*, Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); see also *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

**III.  Discussion:**

Legal theories based on retaliation, racial discrimination, and hostile work environment brought by Williams under Title VII and the PHRA will be addressed by the Court from the standpoint that the analysis is identical under Title VII and the PHRA. In the Third Circuit, "[c]laims under the PHRA are interpreted coextensively with Title VII claims." See *Lazard v.*

4

*All Restore, LLC*, No. 19-6040, 2021 U.S. Dist. LEXIS 59200, at *9 (E.D. Pa. Mar. 21, 2021) (quoting *Atkinson v. LaFayette Coll.*, 406 F.3d 447, 454 n.6 (3d Cir. 2006)); see also *Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the PHRA is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.").

The Court will also apply an identical approach when analyzing Williams' claims based on a legal theory of disability discrimination under the ADA and the PHRA because, "[t]he analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds." *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141-42 n.5 (3d Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002)). The Court will only vary its analysis when addressing the retaliation claim brought against David Zavala in his individual personal capacity. As to David Zavala's individual liability, the Court will focus only on claims brought pursuant to the PHRA.

A.  **Allegations in the Complaint Fail to Establish a Retaliation Claim under Title VII or the PHRA:**

Title VII prohibits "employers from retaliating against employees for complaining about discrimination and harassment in the work place." *Young v. City of Philadelphia Police Dep't*, 651 F. App'x 90, 95 (3d Cir. 2016). To succeed on a retaliation claim, a plaintiff must establish "(1) [he] engaged in [a protected] activity; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Id.*

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly

5

retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Oden v. SEPTA*, 137 F. Supp. 3d 778, 791 (E.D. Pa. 2015). Other evidence may also support a causal link. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280–81 (3d Cir. 2000) ("Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference. For example, a plaintiff may establish the connection by showing that the employer gave inconsistent reasons for terminating the employee . . . Moreover, we have been willing to explore the record in search of evidence, and our caselaw has set forth no limits on what we have been willing to consider."). *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (holding that the temporal proximity was unduly suggestive where the plaintiff was terminated seven days after she engaged in protected activity); *Stocker v. Green, Tweed & Co., Inc.*, No. 18-4503, 2020 U.S. Dist. LEXIS 137364, at *52 (E.D. Pa. Aug. 3, 2020) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, the temporal proximity [of one week] is in the realm of what this Court and others have found sufficient at the prima facie stage."); *see also Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188–89 (3d Cir. 2003) (holding that ten days was sufficient to establish a causal link).

To demonstrate causation with only the timing of the protected activity and adverse action, "the temporal proximity must be immediate." *Blakney v. City of Phila.*, No. 12-6300, 2013 U.S. Dist. LEXIS 77925, at *11 (E.D. Pa. June 4, 2013), *aff'd*, 559 F. App'x. 183 (3d Cir. 2014) ("The Third Circuit has suggested that a temporal proximity of two days is sufficient to establish causation, [] whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of wrongdoing.") If temporal proximity is

6

not unusually suggestive of retaliatory motive, there must be further evidence to substantiate a causal connection. *McCloud v. United Parcel Serv. Inc.*, 543 F. Supp. 2d 391, 401-02 (E.D. Pa. 2008) (granting summary judgment on a retaliation claim). Such evidence includes: (1) "a pattern of antagonism"; (2) "inconsistencies in the employer's reasons for acting"; or (3) "other facts that show retaliatory animus." *Id*; *see also Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) ("[when] the temporal proximity is not so close as to be unduly suggestive . . . timing plus other evidence may be an appropriate test.").

In the Complaint, Williams alleges that he engaged in two protected activities that give rise to his retaliation claim. He cites to the fact that he filed an EEOC Charge of discrimination, and the fact that he complained about racial discrimination at Piedmont. In his Complaint, Williams alleges:

> I was retaliated against for filing an EEOC [Charge] against Piedmont Airlines in Philadelphia, PA and for complaining about racial discrimination towards African Americans in reference to hiring and firing of African-American employees at Piedmont Airlines in Philadelphia, PA. I was retaliated against by Piedmont Airlines for stating that African-Americans are hired in to mid-level management position[s] at a far lower rate than Hispanics despite the fact that a majority of the workforce is African-American.

(Complaint page 1.) Despite Williams' claim that he complained about the disparity in African-American representation in mid-level management positions, the Complaint is devoid of any specific factual allegations to develop this purported claim. In regard to complaints about racial discrimination, the Complaint merely references a conversation that Williams had with Claudia Sales. Williams avers that when representing a black colleague "Mr. Murray" in an alleged termination hearing, Williams "explained to Manager Claudia Sales that there were Hispanic employees [who] had accumulated far more attendance [infractions] than Mr. Murray, but remained employees of the company." (Complaint page 6.)

Williams then identifies five separate incidents which the Court will assume Williams is offering as purported examples of adverse employment actions that were taken against him. First, Williams alleges that Piedmont deactivated his flight benefits "due to a corporate investigation." Williams then appears to make reference to the grievance system established under the Rail Road Labor Act, and an instance when he received a warning letter for poor job performance which he fought through the grievance system and ultimately had overturned. Williams avers that, thereafter, a Department Manager named David Zavala allegedly "attempted to persuade [Williams] that the write-up was not overturned by the system board." Williams also claims that Piedmont instructed employees not to speak with him, and that both Piedmont and his Union worked in conjunction to prevent him from representing his nephew Brandon Williams in his grievance hearing—presumably under the Railway Labor Act. (Complaint page 7-8.) Finally, Williams references the fact that his nephew, who also purportedly worked at Piedmont, was terminated. (Complaint page 8.)

**A.1.   Claim of Retaliation for Filing an EEOC Charge:**

With regards to Williams' claim for retaliation for filing an EEOC Charge, the Complaint fails to establish a causal connection between any purported adverse employment action and the filing of the EEOC Charge. Williams filed the EEOC Charge on November 11, 2019.[1] He alleges that Piedmont deactivated his flight benefits in September 2019. Piedmont deactivated Williams' flight benefits two months before he filed the EEOC Charge; therefore, he cannot

---

[1] Williams' EEOC Charge is a public record that the Court may consider in ruling on the motion to dismiss. *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 267 F.3d 579 (3d Cir. 2011) ("[U]ner the applicable legal standard we may consider the EEOC charge and related EEOC document . . . either as undisputed documents reference in the complaint or central to the plaintiff's claim, or as information which is a matter of public record.").

8

establish a causal connection between the alleged adverse action – the deactivation – and the protected activity of filing an EEOC Charge.  Williams equally fails to establish a causal connection between the EEOC Charge and: the purported disagreement he had with David Zavala; the alleged fact coworkers were told not to speak to Williams; the alleged fact that he was prevented from representing his nephew during grievance proceedings and the termination of his nephew.  In his Complaint, Williams fails to provide dates for when these incidents – alleged adverse employment actions – occurred, and he fails to plead any other facts to causally connected these events to his EEOC Charge.  Therefore, his claim based on a theory of retaliation is factually unsupported.  Williams' retaliation claim fails because he has not pled fact to evaluate the issue of temporal proximity or causation in relationship to the filing of the EEOC Charge and any adverse action by Piedmont.  *Blakney v. City of Philadelphia*, No. 12-6300, 2013 U.S. Dist. LEXIS 77925, at *14-15 (E.D. Pa. June 4, 2013, *aff'd*, 559 F. App'x 183 (3d Cir. 2014) (granting motion to dismiss retaliation claim despite allegations that the adverse action occurred after the complaint because of no facts to suggest immediacy for causation).

      A.2.    **Claim of Retaliation for Comments Made to Claudia Sales:**

Williams equally fails to establish a causal connection between any purported adverse employment action and the comments that he allegedly made to Claudia Sales; therefore, his retaliation claim based on comments to Claudia Sales fails.

In the Complaint, Williams avers that he had a discussion with a manager named Claudia Sales in which he accused Piedmont of racial discrimination.  Williams alleges that this discussion occurred while he was representing a coworker during a grievance proceeding.  Williams further alleges that the following week his flight benefits were deactivated.  However, Williams own allegations undercut his ability to establish a causal connection between his flight

9

benefits being cut and his conversation with Ms. Sales because in the Complaint he alleges that his benefits were cut "due to a corporate investigation." (Complaint page 6.) Williams further omits key facts from the Complaint that appear in his EEOC Charge of Discrimination. (EEOC Charge page 3-4.) Williams omits allegations that the deactivation of flight benefits applied to numerous employees and was done in relationship to a corporate fraud investigation. (*Id.*) As alleged in his EEOC Charge, corporate security accused numerous employees of selling their flight benefits. (EEOC Charge page 4.) Thus, it would appear to the Court that the deactivation of flight benefits occurred in relationship to a fraud investigation that had nothing to do with any comment that Williams made to Ms. Sales.

      Williams further fails to establish temporal proximity or any fact to support a causal connection between his discussion with Ms. Sales and: the purported disagreement he had with David Zavala; the alleged fact coworkers were told not to speak to Williams; the alleged fact that he was prevented from representing his nephew during grievance proceedings; and the termination of his nephew. In his Complaint, Williams fails to provide dates for when these incidents – alleged adverse employment actions – occurred. Therefore, he has failed to plead facts to support his retaliation claim. Williams' retaliation claim fails because he has not pled fact to evaluate the issue of temporal proximity or causation in relationship to his conversation with Ms. Sales and any adverse employment action. *Blakney v. City of Philadelphia*, No. 12-6300, 2013 U.S. Dist. LEXIS 77925, at *14-15 (E.D. Pa. June 4, 2013, *aff'd*, 559 F. App'x 183 (3d Cir. 2014) (granting motion to dismiss retaliation claim despite allegation that the adverse action occurred after the complaint because of no facts to suggest immediacy for causation).

**B.     Allegations in the Complaint Fail to Establish a Claim for Race Discrimination under Title VII or the PHRA:**

The Complaint fails to set forth facts to satisfy the necessary elements of a claim for racial discrimination—disparate treatment. To establish a prima facie case of discrimination based on disparate treatment under Title VII, a plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. See *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999); *Glenn v. Raymour & Flanigan*, 832 F. Supp. 2d 539, 548 (E.D. Pa. 2011).

The Complaint fails to set forth facts to establish that Williams was subject to an adverse employment action; therefore, he fails to establish a claim for racial discrimination—disparate treatment. An adverse employment action in the context of a disparate treatment claim is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Reynolds v. Dep't of Army*, 439 F. App'x 150, 153 (3d Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); see also *Tucker v. Merk & Co.*, 131 F. App'x. 852, 855 (3d Cir. 2005) ("A tangible employment action in most cases inflicts direct economic harm."). The Complaint filed in this action is devoid of any mention of an adverse employment action. There is no allegation that Williams was subject to termination, promotion denial or reassignment. He merely alleges that his "employee flight benefits were deactivated due to [a] corporate investigation".

In the Complaint, Williams provides no context surrounding the deactivation of his flight benefits. He also fails to define or explain what flight benefits are and what he was entitled to under the flight benefits program. Therefore, it is impossible for the Court to evaluate whether

11

the deactivation of flight benefits constitutes a "significant change in benefits" which could be interpreted as an adverse employment action. However, even if Williams had properly pled his claim, it is unlikely that the deactivation of flight benefits would constitute an adverse employment action in the context of a disparate treatment discrimination claim. *Tucker*, 131 F. App'x. at 855-856 (finding as a matter of law that despite employer's policy of compensating employees for education credits, it was not an adverse action for the employer to refuse to pay for plaintiff's MBA credits); *Clayton v. Pennsylvania Dept. of Welfare*, 304 F. App'x. 104, 106-07 (3d Cir. 2008) (finding changing work schedule, moving mailbox, denying bonus, removing furniture from office, not to be adverse actions); *Mihalko v. Potter*, 2003 U.S. Dist. LEXIS 24825, at *2, 6, 18, 53 (W.D. Pa. Dec. 12, 2003) (denying a request for time-off and directing other employees not to speak to plaintiff are not adverse actions).

Assuming arguendo, that the deactivation of Williams' flight benefits was an adverse employment action, his claim for disparate treatment still fails because he pled no facts to establish that the deactivation of flight benefits occurred under circumstances that give rise to an inference of discrimination—the fourth element of a claim under Title VII. Williams simply alleges that he is an African-American male and that his "flight benefits were deactivated due to [a] corporate investigation." (Complaint page 6.) Beyond this barebones allegation, Williams does nothing to develop his claim. For example, Williams' Complaint is devoid of any allegation that similarly situated members of a different class of individuals were permitted to retain their flight benefits—or any allegation of that nature.

Given the fact that Williams fails to allege he suffered an adverse employment action or that circumstances exist which give rise to inference of discrimination, the Complaint will be dismissed without prejudice.

C.     **Allegations in the Complaint Fail to Establish a Hostile Work Environment Claim under Title VII or the PHRA:**

In the Complaint, Williams asserts that he was subject to discrimination because Piedmont "fail[ed] to stop harassment." (Complaint page 3.) However, the Complaint is devoid of any alleged facts to establish that Williams was subjected to a hostile work environment. The Complaint fails to set forth facts to satisfy the necessary elements of a hostile work environment claim under Title VII or the PHRA.

"To establish a racially hostile work environment, a plaintiff must prove that: (1) [he] suffered intentional discrimination because of [his] race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the employee; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Griffin v. Harrisburg Prop. Servs., Inc.*, 421 F. App'x. 204, 207 (3d Cir. 2011). When evaluating a hostile work environment claim, "[a court must] consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere [an] offense utterance; and whether it unreasonably interferes with an employee's work performance." *Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x. 88, 93 (3d Cir. 2014).

In the Complaint, Williams identifies five separate incidents which the Court will assume Williams is offering as purported examples of harassment in support of his hostile work environment claim. First, Williams alleges that Piedmont deactivated his flight benefits "due to a corporate investigation." Williams then appears to make reference to the grievance system established under the Rail Road Labor Act, and an instance when he received a warning letter for poor job performance which he fought through the grievance system and ultimately had overturned. Williams claims that, thereafter, a Department Manager named David Zavala

allegedly "attempted to persuade [Williams] that the write up was not overturned by the system board." Williams also claims that Piedmont instructed employees not to speak with him, and that both Piedmont and his Union worked in conjunction to prevent him from representing his nephew in a grievance hearing. (Complaint page 6-7.) Finally, he alleges his nephew was terminated. (Complaint page 8.)

Williams' hostile work environment claim is deficient because the Complaint is devoid of alleged facts to demonstrate a relationship between these incidents and his race. See *Acosta v. East Penn Mfg. Co.*, No. 14-1859, 2015 U.S. Dist. LEXIS 133240, at *24 (E.D. Pa. Sept. 30, 2015) (granting summary judgment on a hostile work environment claim because the plaintiff failed to plead facts to suggest that the "bullying" or "poor training" were "attributable to [the plaintiff's] race as required to satisfy the first prong of the hostile work environment."); *Miller*, 565 F. App'x. at 93 (affirming order dismissing hostile work environment claim because twice saying "you people" and stating someone should receive "psychiatric help" did not rise to the level of severe and pervasive conduct.)

Williams' hostile work environment claim is also insufficiently pled because the Complaint is devoid of alleged facts to show that these isolated incidents were severe, frequent, or threatening in nature such that they change the conditions of employment. See e.g., *Acosta*, 2015 U.S. Dist. LEXIS 133240, at *25 (granting summary judgment on a hostile work environment claim because "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."); *Jean-Louis v. RGIS Inventory Specialists, LLC*, No. 08-2662, 2011 U.S. Dist. LEXIS, at *30 (E.D. Pa. Aug. 22, 2011) (dismissing plaintiff's hostile work environment for failure to state a claim; plaintiff's

allegation that her supervisor treated her poorly, without more, did not establish a racially hostile work environment claim).

For these reasons, Williams' hostile work environment claim will be dismissed without prejudice.

**D. Allegations in the Complaint Fail to Establish a Claim for Disability Discrimination under the ADA or the PHRA:**

The Complaint fails to set forth facts to satisfy the necessary elements of a claim for disability discrimination under the ADA or PHRA. To establish a prima facie claim for disability discrimination, a plaintiff must demonstrate "that (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Wilkie v. Luzerne Cty.*, 207 F. Supp. 3d 433, 436 (M.D. Pa. 2016) (citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir.1996)). A plain reading of the Complaint illustrates that Williams has failed to plead any facts to satisfy any of the necessary elements of the tripartite test to establish a claim for disability discrimination. The most troubling aspect of the disability discrimination claim advanced by Williams is the fact that he fails to identify any disability from which he suffers from that affects a major life activity. To survive a motion to dismiss claim under the ADA, "a plaintiff must allege facts which show [he] has an impairment that substantially limits at least one major life activity*." Nerosa v. Storecast Merch. Corp.*, No. 02-440, 2002 U.S. Dist. LEXIS 16210, at *21 (E.D. Pa. Apr. 28, 2002). Therefore, Williams' disability discrimination claim fails at the pleading stage.

**E. Retaliation Claim Against David Zavala:**

Williams also asserts what he characterizes as a retaliation claim against a manager identified in the Complaint as David Zavala. (Opposition to Motion to Dismiss page 2, ECF No.

15

19.)  Personal individual liability can attach under the PHRA.  43 P.S. § 955(e).  However, individual liability is usually limited to aiders and abettors who must be "active partners with the principal in the intent to commit a wrongful act."  *Destefano v. Henry Mitchell Co.*, No. 99-5501, 2000 U.S. Dist. LEXIS 6073, at *7 (E.D. Pa. April 13, 2000) (citing *Marks v. Bell Telephone Co. of Pa.*, 331 A.2d 424, 428 (Pa. 1975)); see also *Smith v. RB Distribution Inc.*, 498 F. Supp. 3d 645, 665 (E.D. Pa. Oct. 28, 2020) (under the PHRA, individual defendants cannot be liable for aiding and abetting discrimination without corporate liability for discrimination.).

Since Williams has failed to establish a primary violation by Piedmont, his claims against David Zavala in his individual capacity will be dismissed without prejudice.  *Elmarakaby v. Wyeth Pharm., Inc.*, No. 09-1784, 2015 WL 1456686 at *9 (E.D. Pa. Mar. 30, 2015).

**IV.  Conclusion:**

For these reasons, Defendants' Motion to Dismiss will be granted and the Complaint will be dismissed without prejudice.  Plaintiff will be granted thirty days to file an amended complaint.

BY THE COURT:

　/s/ John Milton Younge　
Judge John Milton Younge